## Brown *versus* Pendleton *et al.*

1. A father lent money to a married daughter; it was secured by bond executed by the husband alone and a mortgage by both on the daughter's separate real estate. She kept it in her separate account in bank, bought goods with it, with her husband's assent opened a store in her own name, which she continued so to keep, paying for other goods with the proceeds and occasionally buying on a short credit. The goods were levied on for her husband's debt. In a suit by the wife the court below instructed the jury that the goods were the husband's and she could not recover. *Held*, to be error.

2. The execution of the bond did not make it the husband's debt: the bond was collateral to the mortgage.

3. Property purchased by a wife on the credit of her separate estate or by her earnings derived from the management of it, is protected from her husband's creditors.

January 23d 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

[Brown *v.* Pendleton.]

Error to the Court of Common Pleas of *Delaware county* : Of January Term 1868, No. 320.

This was a feigned issue under the Sheriff's Interpleader Act, in which Susan B. Brown (claimant) was plaintiff, and F. E. Pendleton & Co. were defendants, to try the ownership of certain goods levied on by the sheriff under an execution issued by the defendants against Daniel Brown.

The claimant was the wife of Daniel Brown. Mrs. Brown was the owner as her separate property of certain real estate, and her husband was insolvent. Mrs. Brown, upon consultation with counsel, made arrangements to borrow from her father $600 for the purpose of opening a store, the money to be secured on her real estate. A bond for that amount was executed by the husband alone, and both together joined in the execution of a mortgage on Mrs. Brown's land. Upon the delivery of these papers the father gave to Mrs. Brown $600. · She immediately opened an account in the Bank of Delaware County in her own name, and deposited the $600 there. She at once rented a storehouse, and paid the rent, $285 in advance, by a check drawn against her bank account. The dwelling-house of herself and husband was in no way connected with the store. She then purchased goods in Philadelphia for her store without assistance of her husband, paying for them by checks on her bank ·ccount. She continued selling goods from the store and depositing the proceeds to her bank account; and for other goods purchased, some of which she obtained on thirty days' credit, she paid from the same source. The husband knew she was thus carrying on business, and assented to it.

During the same time the husband had another store entirely distinct and away from Mrs. Brown's, in which he was engaged in retailing tobacco. Under the execution above mentioned his goods and Mrs. Brown's were levied on : his goods producing little or nothing.

The court (Butler, P. J.) charged the jury :—

" To entitle the plaintiff to recover she must show that the goods in controversy were purchased by her, with her own separate means. The money with which she claims to have purchased them was borrowed on the husband's bond, secured by a mortgage of the wife's land. *He* was liable to be forced to return the money. That he may have been insolvent at the time, and the wife's land looked to as the real security, is unimportant. She has paid nothing on account of this debt, and it is not certain she ever will.

" If property of the husband can be found, now or hereafter, he must return this money, and her land will not be disturbed. It would not do therefore to treat the money thus borrowed as the wife's separate estate, and it is by no means clear that this particular money paid for the goods ; though were there

[Brown v. Pendleton.]

nothing else in the way, we would probably find sufficient in the evidence to justify a submission of this question to the jury.

"But in addition to the difficulty already remarked upon, the goods were purchased on *credit*. Here again the husband (who was aware of the transaction and assenting to it) became responsible. The debt thus contracted was *his* alone, the wife being in no respect liable. The goods consequently became *his*. So that if the money borrowed were treated as hers, and she subsequently paid this debt with it, this would be but furnishing money on his account, paying his debt, and would not change the title of the goods from him to her.

"We must therefore charge you that the plaintiff has not shown a case entitling her to recover, and your verdict must be for the defendant."

The verdict was for the defendants.

The plaintiffs took out a writ of error, and in a number of specifications assigned the charge of the court for error.

*G. E. Darlington* and *W. Darlington* (with whom was *C. D. Manley*), for plaintiffs in error, cited Tripner v. Abrahams, 11 Wright 220; Frick v. Devries, 14 Id. 266; Gillespie v. Miller, 1 Id. 247; Robinson v. Wallace, 3 Id. 129; Wieman v. Anderson, 6 Id. 311.

*J. B. Hinkson* and *W. Ward*, for defendants in error, cited Auble v. Mason, 11 Casey 261; Rhoads v. Gordan, 2 Wright 277; Walker v. Reamey, 12 Casey 410; Gamber v. Gamber, 6 Harris 363; Keeney v. Good, 9 Id. 349; Winter v. Walter, 1 Wright 155; Robinson v. Wallace, 3 Id. 129; Hoffman v. Toner, 13 Id. 231; Baringer v. Stiver, Id. 129; Raybold v. Raybold, 8 Id. 308; Gault v. Saffin, 8 Wright 307; Wieman v. Anderson, 6 Id. 311; Flick v. Devries, 14 Id. 266.

The opinion of the court was delivered, February 4th 1869, by
AGNEW, J.—The facts of this case are few and admitted. It was a loan by a father to a daughter expressly on the credit of her separate estate, which she mortgaged for its repayment. The money went directly into her hands, and was used by her. But in carrying out the arrangement for security the husband's bond was given and recited in the mortgage. It is not pretended however that the debt was his own, and the bond was only the mere form the transaction assumed under advice of counsel. The learned judge thought that this direct liability of the husband made the debt his, on the ground that the bond in form of law is the principal and the mortgage its security; from which he drew the conclusion that the money secured by it was his. This contradicts the proof that the money was actually lent to the wife on

[Brown *v.* Pendleton.]

the security of her property, and the bond given only as a part of the legal means supposed to be necessary to give the security effect. The husband's bond was in point of fact collateral to the mortgage, which was the principal security for the loan. Had the wife's estate been brought into distribution on the admitted facts, the husband, by payment of the bond, would have been entitled to be repaid out of the fund. That too much importance must not be attributed to forms contrary to the clearly proved intention and acts of the parties, is well shown by Lowrie, C. J., in Trimble *v.* Reis, 1 Wright 454–5. The error of the court below in this respect was fundamental, for it took the case from the jury on the ground that the wife had no money of her own to pay for the goods.

The court seems also to have fallen into error in relation to the purchase of the goods on credit. Starting with the assumption that the purchase by the wife was made without means of her own, the court correctly held that the debt was her husband's, and the goods his; and that any subsequent payment by her would not change the title to the goods. But it appears by the statement of facts contained in the paper-books of both sides, that she rented the store and purchased the goods *after* she got the money from her father, and paid for the rent of the former, and a part at least of the price of the latter, by her own checks on the sum she had deposited in bank. Both the ownership of the fund and the payment on account by the wife were clearly established, and entitled her case to be sent to the jury with proper instructions upon the whole case. That a wife cannot purchase on credit, or pay with her own earnings which belong to her husband, we have said in many cases. Robinson & Co. *v.* Wallace, 3 Wright 129; Baringer *v.* Stiver, 13 Id. 129; Hoffman *v.* Toner, Id. 231; Raybold *v.* Raybold, 8 Harris 311; Flick *v.* Devries, 14 Wright 266. But this is where the credit is not founded on her own separate estate. Nowhere has it been said that a credit undoubtedly founded on the wife's own means and paid for thereout, or that the earnings derived from the management of her own estate, are not to be protected. The very reverse has been held as flowing from the very terms of the Married Woman's Act of 1848, which provides that her separate estate " shall be used, owned and enjoyed by her as her own separate property," and " shall not be subject to levy and execution for the debts or liabilities of her husband :" Wieman and Wife *v.* Anderson, 6 Wright 311; Rush *v.* Vought, 5 P. F. Smith 438; Conrad *v.* Shomo, 8 Wright 193. In Wieman and Wife *v.* Anderson the authorities are collated and examined very fully by Woodward, J., and in Baringer *v.* Stiver they are again referred to, and the distinction stated to rest on the question whether the wife has a separate estate which is the source of her credit, or known

[Brown v. Pendleton.]

means of payment which can be traced by the proof. General expressions found in an opinion are unsafe to be relied on in the argument. We have repeatedly said that what is stated and decided in every case must be understood in reference to its special facts and circumstances. An examination of all the authorities will show that the broad distinction has been preserved between a wife's credit founded upon her own estate and its product, and a credit founded on nothing but her mere promise or upon earnings that belong to her husband. But where she has known property of her own, the credit founded upon it, or the products arising from it, are protected from her husband's creditors. In the late case of Rush v. Vought, 5 P. F. Smith 438, this has been reaffirmed and shown to be based upon correct principles, necessarily arising from the rights with which she is invested under the Act of 1848. Upon the whole case the judgment of the court below must be reversed, and a *venire facias de novo* awarded.